# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRP HOLD OX, LLC, and TDBBS, LLC, )
)
)
Plaintiffs/Counterclaim )
Defendants, )
)
) C.A. No. N18C-04-116 CLS
v. )
)
WILLIAM CHILIAN, )
)
Defendant/Counterclaim )
Plaintiff. )

Date Submitted: July 6, 2018
Decided: October 31, 2018

On Plaintiffs/Counterclaim Defendants BRP Hold Ox, LLC and TDBBS, LLC's
Motion to Dismiss Counterclaims.
**Granted**.

Scott T. Earle, Esquire, Zarwin Baum DeVito Kaplan Schaer Toddy, P.C., 1007
North Orange Street, 4th Floor, Wilmington, Delaware, 19801. Attorney for
Plaintiffs/Counterclaim Defendants BRP Hold Ox, LLC and TDBBS, LLC.

William Chilian, 4307 Nevil Bend Turn, Moseley, Virgina, 23120. *Pro Se.*

Christopher Viceconte, Esquire, Gibbons P.C., 300 Delaware Avenue, Suite 1015,
Wilmington, Delaware, 19801. Former Attorney for Defendant/Counterclaim
Plaintiff William Chilian.

**Scott, J.**

This case involves a former employee subject to a non-compete clause undertaking employment with an organization engaged in the same general line of business. The former employer instigated an action to enjoin the former employee's employment, and recover damages. The issue before the Court is whether the former employee's counterclaims are barred by the absolute privilege doctrine, or fail to meet the pleading requirements.

## Background

Prior to April 2017, William Chilian (Defendant/Counterclaim Plaintiff) was employed by TDBBS, LLC as vice president of marketing, in charge of the Barkworthies organization. TDBBS manufactures and sells natural pet treats and chews throughout the United States. As part of his compensation from TDBBS Defendant was granted a membership interest in the LLC. At some point the organization as a whole was offered for sale, and Chilian took a role in marketing the organization to potential buyers. In March 2017, BRP Hold Ox, LLC acquired TDBBS by purchasing all membership interests in the LLC. BRP and TDBBS (collectively "BRP") manufacture and sell pet related products including natural dog chews and treats and other similar items. As part of the purchase of TDBBS members signed an agreement not to compete with TDBBS after the sale, nor disclose any proprietary information.

In April 2017, Chilian left BRP's employ, and was subsequently hired by Central Garden & Pet Company (Central). Central consists of several subsidiaries, at least one of which is in direct competition with Chilian's former line of business.

At some point BRP became aware of Chilian's new employment situation. In December 2017, BRP sent a demand letter to Chilian and a Central subsidiary advising of Chilian's contractual obligations, and requesting written confirmation of steps the subsidiary would take to ensure Chilian's compliance with his obligations. The parties disagree as to whether there was response to this letter.

On January 23, 2018, BRP filed an action in United States District Court for the District of Delaware. Shortly after the Federal Action was filed Chilian's employment with Central ended. BRP subsequently withdrew their motion for preliminary injunctive relief. Responding to a jurisdictional challenge BRP filed a motion for voluntary dismissal of the Federal Action from the District Court. The voluntary motion to dismiss was granted. BRP filed this action in April 2018, asserting it is nearly identical to the complaint in the Federal Action.

## Parties Assertions

Chilian asserted four counterclaims against BRP; Tortious interference with his employment, malicious prosecution, abuse of process, and declaratory judgment. BRP seeks dismissal of all counterclaims.

3

BRP argues the tortious interference claim is barred by the litigation privilege which protects statements of parties in the course of judicial proceedings that are relevant to the issue in the case. BRP asserts Chilian's claim is based on the demand letter and the subsequent Federal Action.

Chilian contends the absolute litigation privilege only applies to claims of defamation arising from statements made in the course of judicial proceedings. Chilian contends his tortious interference claim is not a thinly veiled defamation case, and that he has sufficiently pleaded a claim for tortious interference.

BRP next argues Chilian has failed to state a claim for malicious prosecution. BRP argues the Federal Action was filed in good faith. BRP further argues Chilian has failed to allege three elements of a malicious prosecution claim including initiating a suit without probable cause, with malice, and termination of the action in favor of the defendant.

Chilian contends there is evidence suggesting the initiation of the Federal Action was without probable cause and that he has sufficiently pleaded all elements of malicious prosecution. Chilian argues he need not present evidence at this stage in the proceedings where the Superior Court Civil Rules allow malice to be averred generally.

BRP next argues Chilian's claim for abuse of process fails as a matter of law. BRP argues Chilian has not alleged they had an ulterior motive or illegitimate objective in maintaining suit against Chilian.

Chilian contends BRP brought suit with knowledge he was not working for a competitor, and with the intent to improperly force him to terminate his employment.

Finally, BRP argue Chilian's claim for declaratory judgment is redundant and unnecessary. BRP argues the relief sought by Chilian is the inverse of their claims and should be dismissed. Chilian argues his claim for declaratory relief is valid and should survive at this stage of the litigation.

**Standard of Review**

The test for sufficiency of a complaint challenged by a Rule 12(b)(6) motion to dismiss is whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.[1] In making its determination, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in favor of the non-moving party.[2] The complaint must be without merit as a matter of fact or law to be dismissed.[3]

---

[1] *Spence v. Funk,* 396 A.2d 967, 968 (1978); *see Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 2012 WL 172844, at *1 (Del. 2012)(citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 537 (Del. 2011)).
[2] *Ramunno v. Cawley,* 705 A.2d 1029, 1034-36 (Del. 1998); *Nix v. Sawyer,* 466 A.2d 407, 410 (Del. Super. Ct. 1983).
[3] *Diamond State Tel. Co. v. University of Delaware,* 269 A.2d 52 (Del. 1970).

Therefore, if the plaintiff can recover under any conceivable set of circumstances susceptible of proof under the complaint, the motion to dismiss will not be granted.[4] The Court need not, however, blindly accept conclusory allegations unaccompanied by "specific supporting factual allegations.[5]

## Analysis

**Tortious Interference**

Delaware Courts consistently follow the Restatement (Second) of Torts which recognizes a claim for tortious interference with contractual relations where a defendant utilizes "wrongful means" to induce a third party to terminate a contract.[6] Conduct amounting to tortious interference has been found actionable even where the third party is lawfully entitled to terminate a contract "at will."[7]

BRP relies on *Barker v. Huang* for the proposition that statements made as part of a judicial proceeding are absolutely privileged, and therefore cannot be the basis for an intentional tort.[8]

The absolute privilege doctrine has long been recognized in Delaware as a protection from actions for defamation. The privilege applies to statements offered

---

[4] *Ramunno*, 705 A.2d at 1034; *see Cambium*, 2012 WL 172844, at *1 (citing *Cent. Mortg.*, 27 A.3d at 537)).
[5] *Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at *2 (Del. Super. Ct. 2016).
[6] *ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749, 751 (Del. 2010).
[7] *Id.* at 751.
[8] *Barker v. Huang*, 610 A.2d 1341 (Del. 1992).

6

in the course of judicial proceedings, by judges, parties, witnesses and attorneys when the statements are relevant to a matter at issue in the case.[9]

The Delaware Supreme Court has explained the policy supporting absolute privilege "is to facilitate the flow of communication between persons involved in judicial proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication."[10] In other words, absolute privilege promotes "the encouragement of candid discussions between contentious parties free from the threat of collateral lawsuits based on reputationally based torts such as defamation, libel, or intentional infliction of emotional distress."[11]

The Court of Chancery in *Paige* stated without holding, "policy rationale for the privilege is best served by limiting the privilege's scope to *only defamation and related torts* arising from derogatory statements alleged to be harmful to the suing party's reputation or psychic well-being."[12]

Delaware Courts have frequently addressed questions of defamation and related torts. In *Barker v. Huang*, Barker filed a complaint in Superior Court, seeking damages for defamation of character, libel, slander, tortious invasion of privacy, wrongful use of civil proceedings, abuse of process, intentional infliction

---

[9] *Barker v. Huang,* 610 A.2d 1341 (Del. 1992).
[10] *Id.* at 1345.
[11] *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 22 A.3d 710, 722 (Del. Ch. 2011).
[12] *Id*. at 720, (emphasis added).

of emotional distress, outrageous conduct and civil conspiracy.[13] Barker's claims stemmed from statements made by Huang in a deposition and his counterclaim in an unrelated civil suit. Barker was not a party to that action. The Court in *Barker* upheld summary judgment in favor of Huang related to the claim for defamation. The Court found Barker's claims arose from statements within the judicial context, and thus covered by the defense of absolute privilege.[14]

Moving to Barker's non-defamation claims of invasion of privacy and intentional infliction of emotional distress related to the statements made during the course of litigation, the Court determined no matter how they were framed, Barker's claim was "that Huang intentionally made derogatorily false statements about her, and that she has been harmed thereby."[15] The Court held regardless of the tort theory by which Barker sought recovery, absolute privilege barred her claims.[16]

This Court in *Walker v. Parson*, reached the same conclusion.[17] Plaintiff in *Walker* brought claims of defamation and abuse of process related to two prior actions, one in the Court of Chancery, and one in Superior Court. In the Superior Court action, Walker wrote a letter to opposing counsel, sending a copy to a Superior

---

[13] *Barker,* at 1341.
[14] *Id.* at 1346.
[15] *Id.* at 1349.
[16] *Id*.
[17] *Walker v. Parson*, 2016 WL 3130093 (Del. Super. Ct. 2016), aff'd, 151 A.3d 455 (Del. 2016).

Court Commissioner, that letter became part of the Court's record in the case. Opposing Counsel replied to Walker, also copying the Commissioner. Walker claimed the letter in reply contained defamatory a statement. In the Chancery Court action, Walker claimed a statement contained in a brief in support of Defendant's Motion to Dismiss were defamatory. The Court determined the statements constituted statements made during judicial proceedings, pertinent to the pending action, and thus were privileged.[18]

The facts in *Denoble v. Dupont Merck Pharmaceutical Co.*, are substantially similar to *Walker* where the statements at issue were made to the Division of Unemployment Insurance, and therefore were absolutely privileged.[19] The Court in *Denoble* went one step farther and stated absolute privilege "extends to an attorney's communication preliminary to the proceedings" citing § 586 of the Restatement (Second) of Torts for support of this conclusion.[20]

However, as the Court of Chancery noted in *Paige,* no other Delaware cases addressed the absolute litigation privilege's applicability to statements made before the initiation of a formal judicial proceeding.[21] The Court in *Paige* analyzed the applicability of absolute privilege in the context of admitting the content of a demand

---

[18] *Walker,* at *3-4.
[19] *DeNoble v. DuPont Merck Pharm. Co.*, 1997 WL 35410094, at *5 (Del. Super. Ct. 1997), aff'd, 703 A.2d 643 (Del. 1997).
[20] *Id.*
[21] *Paige*, at 718.

9

letter into evidence. In its analysis of the absolute privilege doctrine the Court noted a determination as to whether the absolute privilege doctrine applies to communications made in advance of litigation "should be decided in a context where the merits of that issue are actually contested."[22]

As the Court in *Paige* noted, assuming absolute privilege does extend to pre-litigation communications, the rationale for such protection is that it permits parties to peaceably resolve their disputes prior to litigation by previewing claims that will be made in good faith litigation.[23]

*AGC Networks, Inc. v. Relevante, Inc.*,[24] and *Bove v. Goldenberg*[25] raise similar questions as the present case. Following a complaint filed by AGC against Relevante, AGC sent letters to some of its former customers informing them of the complaint requesting that they preserve electronically stored information that might be relevant to the issues in the case. Relevante asserted a counterclaim for tortious interference, alleging that by sending the letters, AGC intentionally and wrongfully interfered with Defendant's business relationships with those parties. AGC filed a motion to dismiss the claim asserting the absolute litigation privilege.

---

[22] *Paige, at 718.*
[23] *Id*. at 723.
[24] *AGC Networks, Inc. v. Relevante, Inc.*, 2015 WL 1517419, at *1 (D. Del. Mar. 31, 2015).
[25] *Bove v. Goldenberg*, 2007 WL 446014 (Del. Super. Ct. 2007).

In *Bove*, Plaintiff asserted claims for defamation and tortious interference. Bove based her claims on statements made in a hearing before the Delaware Human Rights Commission wherein Bove was alleged to have violated the Delaware Equal Accommodations Law. Bove asserted that the defendants engaged in intentional interference by spreading misinformation which affected the success of her law practice.

The Courts in these two cases reached the same conclusion; the doctrine of absolute privilege barred claims of intentional interference related to statements made in the course of litigation.[26] Furthermore, the privilege extends to communications between the parties that are made in an effort to address their alleged grievances.[27]

The question presented before this Court involves two actions, a demand letter from BRP addressed to Chilian and Central, and the Complaint filed in Federal District Court. These actions were taken by BRP to address the potential violation of contractual claims between the parties. Additionally, Chilian's counterclaim asserts these actions caused economic and reputational harm.[28]

---

[26] *AGC Networks, Inc. v. Relevante, Inc.*, 2015 WL 1517419, at *1 (D. Del. Mar. 31, 2015); *Bove v. Goldenberg*, 2007 WL 446014, at *4 (Del. Super. Ct. 2007)
[27] *Bove v. Goldenberg*, at *4.
[28] Answ. at □□ 54, 59.

11

Defamation need not accompany other claims for the absolute privilege to apply. To the extent statements were made prior to, or during judicial proceedings, so long as the statements were made in an effort to address the alleged grievance between the parties, the absolute privilege doctrine applies. For this reason, BRP's motion to dismiss Chilian's tortious interference claim must be **Granted**.

**Malicious Prosecution**

To sustain a cause of action for malicious prosecution a party must show all requirements; 1) the institution of civil proceedings; 2) without probable cause; 3) with malice; 4) termination of the proceedings in the aggrieved party's favor; and 5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury.[29]

With respect to probable cause to initiate a suit, a person has probable cause for bringing a civil suit if he reasonably believes that he has a good chance of establishing it to the satisfaction of the Court or the jury.[30] "[T]he existence or want of probable cause is determined at the time of the inception of the original proceedings..."[31]

---

[29] *Nix*, at 411.

[30] *Henriksen v. Henriksen*, 1987 WL 25466, at *1 (Del. Super. 1987) citing Prosser, Torts § 120 at 85 (4th ed. 1971).

[31] *Nevins v. Bryan*, 2005 WL 2249520, at *1 (Del. Super. Ct. 2005), aff'd, 901 A.2d 120 (Del. 2006).

This Court in *Batchelor v. Alexis Properties, LLC* denied a motion to dismiss a malicious prosecution claim stating at this stage in the suit the claimant's allegations must be accepted as true, however should he be unable to discover evidence that the opposing party brought the action without probable cause and in bad faith, the claim is subject to be resolved in the opposing party's favor at the summary judgment phase.[32]

This case presents the same issue. At this early stage Chilian has raised questions as to BRP's initiation of the Federal Action in good faith.

The requirement is a showing of malice. While malice may be averred generally,[33] the bare allegation that defendants instituted these proceedings solely to intimidate and harass is insufficient.[34] For an act to have been done in such a way as to form the basis of a suit for malicious prosecution the act must have been done with a wrongful or improper motive or with a wanton disregard for the rights of that person against whom the act is directed.[35]

At this stage, Chilian has pleaded BRP initiated the Federal Action with at least the ancillary motive of forcing him from his employment. Accepting as true

---

[32] *Batchelor v. Alexis Properties, LLC*, 2018 WL 1053016, at *4 (Del. Super. Ct. 2018).
[33] Super. Ct. Civ. R. 9 (b).
[34] *Nix*, at 412.
[35] *Nevins v. Bryan*, 2005 WL 2249520, at *1 (Del. Super. Ct. 2005), *aff'd*, 901 A.2d 120 (Del. 2006).

Chilian's pleadings until such time as the factual record is more developed, Chilian has sufficiently pleaded the malice requirement to sustain the action.

The fourth requirement for maintaining this cause of action is a showing that the proceedings terminated in the aggrieved party's favor. BRP points to two non-Delaware cases for their argument that voluntary dismissal in one forum in favor of bringing the same claims in a different forum is not a favorable disposition for a defendant.

The Supreme Court of Vermont's holding in *Siliski v. Allstate Ins. Co.*, is persuasive. There the Court held "if the manner of termination, including dismissal, reflects negatively on the merits of the case, it will be considered favorable to the defendant."[36] However, this Court has denied dismissal of a malicious prosecution claim where the party seeking dismissal has failed to present legal authority showing that a voluntary dismissal should not be considered as a termination in the claimant's favor.[37]

The Federal Action between the parties was dismissed by the District Court on September 26, 2018. In the Court's order dismissing the action, the Court denied Chilian's request for fees and costs noting "[BRP] acted reasonably in withdrawing their motion expeditiously and choosing to file the Superior Court action in light of

---

[36] *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 152 (Vt. 2002).
[37] *Batchelor v. Alexis Properties, LLC*, 2018 WL 1053016, at *4 (Del. Super. Ct. 2018).

14

the jurisdictional challenge raised by [Chilian]."[38] The manner of termination of the Federal Action does not reflect a favorable termination for either side in this action. Dismissal was voluntary following a jurisdictional challenge, and therefore, neutral.

The final requisite to bring a malicious prosecution action is damages, including some special injury. This Court has addressed what constitutes a "special injury" holding it must be something more than expenses and attorney's fees incurred in connection with defending the original suit and alleged damage to the claimant's reputation.[39]

Defendant has alleged Attorney's fees and costs connected with defending the Federal Action. Alone these are insufficient. Defendant has however also alleged the actions have caused him to lose his work, emotional distress, and other monetary loses. These claims are sufficient to support a claim for malicious prosecution.

Causes of action for malicious prosecution are viewed with disfavor by the Delaware Courts, and, therefore, assessed with careful scrutiny.[40] Chilian's claim fails to meet one of the requirements, namely the Federal Action was not terminated in his favor. For this reason, BRP's motion to dismiss Defendant's malicious prosecution claim is **Granted**.

---

[38] *Brp Hold Ox, LLC & TDBBS, LLC, v. William Chilian,* 2018 WL 4613195, at *2 (D. Del. Sept. 26, 2018).
[39] *Cuccia v. Edinburg*, 1984 WL 548380 (Del Super 1984).
[40] *Nix,* at 411.

**Abuse of Process**

Unlike malicious prosecution claims, which focus on a party's initiation of the legal process, abuse of process concerns "perversion[s] of the process after it has been issued."[41] Abuse of process and malicious prosecution both address the same wrong, abusive litigation; it is only a matter of timing between the two.[42] In *Nix* The Court also reviewed a claim for abuse of process. There the Court deferred to prior Delaware precedent for explanation;

> In regard to the claim for abuse of process, Prosser states that the essential elements of the tort are: 1) an ulterior purpose; and 2) a wilful act in the use of the process not proper in the regular conduct of the proceedings. In explaining these elements, Prosser notes that some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. Prosser, Law of Torts, § 121 (4th Ed.1971).[43]

In *Nix,* the Court dismissed a claim for abuse of process where the aggrieved party failed to show 1) a willful and improper act in the use of process; 2) any form of coercion; and 3) a collateral advantage to defendants arising from said coercion."[44] Some form of coercion to obtain collateral advantage, not properly

---

[41] *Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at *2 (Del. Super. 2016).
[42] *Spence v. Spence*, 2012 WL 1495324, at *3 (Del. Super. 2012).
[43] *Nix*, at 412.
[44] *Nix, at 412.*

involved in the proceeding itself, must be shown, such as obtaining the surrender of property or the payment of money by the use of the process as a threat or club. In other words, a form of extortion is required.[45]

In the present case Chilian has alleged BRP improperly sought to force Chilian's separation from his employer, cause financial hardship, intimidate others, and to deprive a rival organization of an employee.

These allegations mirror Chilian's malicious prosecution claim. Defendant has failed to allege some defect in the carrying on of litigation that would sustain an abuse of process claim. Defendant's injuries appear to flow from the initiation of litigation between the parties, not some act or threat not authorized in the carrying out of litigation. For this reason, BRP's motion to dismiss Chilian's abuse of process claim is **Granted**.

**Declaratory Judgment**

This Court is statutorily authorized to declare rights, status and other legal relations whether or not further relief is or could be claimed, where an actual controversy exists.[46] Any person interested under written contract, may have determined any question of construction or validity arising under the contract, and obtain a declaration of rights, status or other legal relations thereunder.[47]

---

[45] See; *Preferred Inv. Servs., Inc.*, 2013 WL 3934992, at *23.
[46] 10 *Del. C.* § 6501.
[47] 10 *Del. C.* § 6502.

BRP points to *CompoSecure, L.L.C. v. CardUX, LLC* for the proposition that Chilian's claim for declaratory judgment is the inverse of the relief they seek.[48] The Court there determined it was unnecessary to grant declaratory judgment as to interpretation of a contract where the Court's decision as to which party was in breach served the same end.[49] In the present case, Chilian has asserted the contract between the parties is not valid. A determination of the validity of the contract, and the obligations due under the same serves the same purpose as the relief Chilian seeks with the counterclaim for Declaratory Judgment. As with *CompoSecure* this claim is redundant and unnecessary. For this reason, BRP's motion to dismiss Chilian's declaratory judgment claim is **Granted**.

For the forgoing reasons, Plaintiff's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Calvin L. Scott

**Judge Calvin L. Scott, Jr.**

---

[48] *CompoSecure, L.L.C. v. CardUX, LLC*, 2018 WL 660178, at *44 (Del. Ch. 2018).
[49] *Id*.